UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NEW ENGLAND TECHNOLOGY, INC.,

　　　Plaintiff,

　　　v.

MARKET DEVELOPMENT SPECIALISTS, INC.,
D/B/A/ WINTERGREEN SYSTEMS, and JOHN
LEVY,

　　　Defendants.

Case No. 11-cv-10485-NMG

REPORT AND RECOMMENDATION ON
THE DEFENDANTS' MOTIONS TO VACATE AND
CAP HOLDINGS, INC.'S MOTION TO INTERVENE

September 21, 2012

SOROKIN, C.M.J.

　　　The defendants Market Development Specialists, Inc. d/b/a Wintergreen Systems

("Wintergreen") and John Levy ("Levy"), as well as proposed intervenor Cap Holdings, Inc.

d/b/a Recovery Management International ("RMI" and, collectively, "the movants"), have

moved to vacate the Court's June 10, 2011 default judgment in this action (docket nos. 17, 19,

26).  RMI has also moved to intervene (docket no. 20).  The plaintiff, New England Technology,

Inc. ("NETI"), has opposed each of these motions.  For the reasons that follow, I respectfully

RECOMMEND that the Court DENY the three motions to vacate, as well as RMI's motion to

intervene.

I.　　　Background

　　　Levy is the president of Wintergreen, an Indiana corporation that is a wholesaler of

electronic goods.  Doc. No. 1 at ¶ 12; Doc. No. 27-9, at 12-13.  An Indiana state court ordered

Wintergreen into receivership on February 3, 2010, <u>see</u> Doc. No. 27 at ¶ 6; Doc. No. 23-10 at ¶ 3, and ordered Chikol Management Intervention and Support Services ("Chikol") to serve as the receiver, <u>see</u> Doc. No. 23-10 at ¶¶ 3-4.  The Indiana court did so at the request of Wintergreen's first-priority lender, Mutual Bank.  Doc. No. 27 at ¶ 6; Doc. No. 23-10.  Neither the movants nor NETI have stated whether the receivership has ended, but the record demonstrates that Chikol was still acting as Wintergreen's receiver in June 2012.  Doc. No. 30 at ¶ 3.

NETI is also an electronic goods wholesaler.  Doc. No. 1 at ¶ 8.  An attorney mailed NETI a demand letter on March 2, 2011, asserting that his client[1] had retained him to "collect an outstanding balance" of more than $2.2 million or "file suit" by March 25, 2011.  Doc. No. 30-1.  Instead of waiting to be sued, <u>see</u> Doc. No. 28, at 3, NETI filed this action against Wintergreen and Levy on March 22, 2011, claiming unjust enrichment, breach of contract, and breach of implied covenant of good faith and fair dealing.  <u>See generally</u> Doc. No. 1.  NETI sought declaratory relief and money damages based on allegations that Wintergreen and Levy had failed to comply with contractual obligations to issue rebates on electronic goods they sold to NETI between October 2006 and February 2007.  <u>Id.</u> at ¶¶ 12-48.

On March 23, 2011, this Court issued a summons that NETI served, with its complaint, later that day.  Doc. Nos. 2, 4-5.  To serve both Wintergreen and Levy, NETI's process server delivered the summons and complaints to Levy personally.  Doc. No. 29 at ¶¶ 8-9.  In the return of service for John Levy, the process server stated that he "served [John Levy] at his business, Wintergreen Systems," and then described several of Levy's physical characteristics.  Doc. No. 4.  The return of service for Wintergreen stated that the process server "serv[ed] John Levy as general manager."  Doc. No. 5.  The first type-written sentence of each return stated that the

---

[1] While NETI claims the attorney represented Wintergreen, he may have represented Levy.  Levy received a carbon-copy of the letter, Doc. No. 30-1, and the same attorney represented Levy in the bankruptcy proceedings, Doc. No. 30-7, at 2.

process server received the request on March 23, 2011.  Doc. Nos. 4-5.  The process server

handwrote March 23, 2010 as the date of service.  Id.  The process server had the returns

notarized on March 24, 2011.  Id.  In a supplemental affidavit, he attested that he mistakenly

wrote "2010" instead of "2011" in the dates of service on the returns.  Doc. No. 29 at ¶ 14.

Levy has not denied he was personally served as described in the returns.  See Doc. No.

27.  Neither Wintergreen nor Levy served responsive pleadings, which were due on or before

April 13, 2011.  Doc. No. 13 at ¶ 6.

On April 26, 2011, NETI filed and served a request for notice of entry of default.  Doc.

No. 6; Doc. No. 13 at ¶ 7.  The clerk entered notices of default on April 29, 2011 and sent copies

to Levy and Wintergreen by certified mail.  Doc. Nos. 8-9.  On May 18, 2011, NETI moved for

default judgment.  Doc. No. 11.  NETI mailed its default judgment papers to the defendants,

Doc. No. 30 at ¶ 5, in addition to posting them on this Court's electronic filing system.  Chikol

employees signed for the notice of default and the default judgment papers that were mailed to

Wintergreen.  Doc. Nos. 10, 30 at ¶ 4, 30-3.

On June 10, 2011, after receiving no responsive pleadings by Levy or Wintergreen (or

anyone acting on their behalf), the Court entered a default judgment against both defendants.

Doc. No. 16.  The order declared that "NETI does not owe [Wintergreen or Levy] any monies"

under the relevant contracts, and required Wintergreen and Levy to pay NETI approximately

$274,000 in compensatory damages, plus prejudgment interest.  Id. at ¶¶ 3, 5.  The damage

award was an offset.  The order adopted the text of a proposed order drafted by NETI's counsel.

See Doc. No. 11-1.  NETI conceded that it owed Wintergreen approximately $734,000, Doc. No.

14 at ¶ 27, but asserted that Wintergreen's indebtedness to NETI exceeded that amount by the

$274,000 sought, id. at ¶ 29.  NETI supported its damage assessment with invoices and other financial documents, as well as an affidavit from its president.  See Doc. Nos. 14 through 14-13.

Levy filed a voluntary bankruptcy petition in the Northern District of Indiana on August 24, 2011.  Doc. No. 27-6.  Levy filed the petition individually; he did not name Wintergreen as a debtor.[2]  Id.  In a schedule filed on October 26, 2011, Levy listed NETI as an unsecured creditor holding a $700,000 claim against him.  Doc. No. 30-7.  The bankruptcy court discharged Levy on November 26, 2011.  Doc. No. 27 at ¶ 10.

RMI purchased certain Wintergreen receivables from Mutual Bank on December 30, 2011.  Doc. No. 21-14.  Soon thereafter, RMI purchased Wintergreen receivables held by Chikol.  Doc. No. 21-13.  Through these purchases, RMI obtained an assignment for all accounts receivable due to Wintergreen from any company, including NETI.  Doc. No. 17-1 at ¶ 12.

Approximately two years before NETI filed the present action, the Federal Trade Commission sued Wintergreen and Levy for unpaid rebates, Doc. No. 17-1 at ¶ 27, and both defendants consented to a judgment of approximately $330,000, Doc. No. 27-9.  That judgment was suspended subject to, *inter alia*, Wintergreen paying rebates to entitled consumers.  Doc. No. 17-1 at ¶ 27.

II.   Motions to Vacate

In requesting vacatur of the default judgments, the movants seek "extraordinary relief" that is "reserved for exceptional circumstances."  Paul Revere Variable Annuity Ins. Co. v. Zang, 248 F.3d 1, 5 (1st Cir. 2001) (internal quotation marks omitted); see Am. & Foreign Ins. Ass'n v. Commercial Ins. Co., 575 F.2d 980, 983 (1st Cir. 1978) (burden on party seeking vacatur to show "good reason for the default and the existence of a meritorious defense").  Federal Rule of

---

[2]  The petition stated Levy does business as, *inter alia*, Market Development Specialists, Wintergreen System, and Wintergreen Computers.  Doc. No. 27-6.

4

Civil Procedure ("Rule __") 55(c) directs courts to consider the reasons set forth in Rule 60(b) when deciding motions to vacate default judgments. Those reasons are:

> (1)     mistake, inadvertence, surprise, or excusable neglect;
> (2)     newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3)     fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4)     the judgment is void;
> (5)     the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6)     any other reason that justifies relief.

Rule 60(b). Except for the fifth provision above, the movants have cited all of the reasons listed in Rule 60(b).[3] None, however, justify the "extraordinary" remedy of vacatur here.[4]

> A.     Rule 60(b)(1)

A default judgment may be vacated based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). To invoke this provision, the movants assert that RMI discovered the default judgment only after it purchased Wintergreen's receivables. Doc. No. 23, at 12. Although NETI questions the veracity of this assertion, Doc. No. 28, at 14-15, the Court need not determine when RMI learned of the judgment.[5] The movants' Rule 60(b)(1) argument fails even if RMI's version of events is credited.

---

[3] Significantly, Levy has not moved to vacate the judgment against him on the grounds that it was discharged in his bankruptcy proceeding, nor has he demonstrated that the Bankruptcy Court's discharge covered this judgment. Absent such a showing, the Court need not address this possible ground for relief. See Am. & Foreign Ins. Ass'n, 575 F.2d at 983 (burden on moving party to establish entitlement to vacatur).

[4] Rule 60(b) motions "must be made within a reasonable time." See Fed. R. Civ. P. 60(c). Moreover, relief is available pursuant to Rule 60(b)(1)-(3) only if it is sought within one year after the entry of judgment. Id. The movants barely met this deadline, as the default judgment entered on June 10, 2011, and the motions to vacate were filed on June 8, 2012.

[5] Although RMI now claims it had "no knowledge of any NETI lawsuit or judgment against Wintergreen or Levy" when it purchased Wintergreen's assets, Doc. No. 17-1 at ¶ 13, NETI has adduced evidence to the contrary. See Doc. No. 30 at ¶ 7; Doc. No. 30-5 (demonstrating that RMI's president called NETI's counsel on April 26, 2011 – nine months before RMI acquired Wintergreen's receivables – seeking information about the amounts in dispute in this action, and that NETI's counsel memorialized the call in a contemporaneous email).

"The determination of excusable neglect 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" Deo-Agbasi v. Parthenon Grp., 229 F.R.D. 348, 351 (D. Mass. 2005). In making such determinations, courts should consider "the danger of prejudice . . . , the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). "Excusable neglect is, despite its elasticity, a demanding standard." Deo-Agbasi, 229 F.R.D. at 351 (internal quotation marks omitted). Inattention or carelessness typically will not justify vacatur on these grounds. See id.

Instead of arguing that Levy and Wintergreen committed excusable neglect when they failed to respond to NETI's complaint, the movants seek to excuse RMI's decision to purchase Wintergreen's assets. RMI, however, is at fault for acquiring assets subject to a default judgment. RMI purchased the assets more than six months after the Court entered the judgment, see Doc. No. 17-1 at ¶¶ 10-11, in an order that was readily discoverable on this Court's searchable, electronic docketing system, see Doc. No. 16. Furthermore, Levy listed NETI as an unsecured creditor and referenced the docket number of this action in a similarly discoverable bankruptcy filing two months before the purchase. Doc. No. 30-7. In these circumstances, movants have failed to meet their burden of establishing excusable neglect.

B.      Rule 60(b)(2)

The movants also argue vacatur is warranted based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial." See Fed. R. Civ. P. 60(b)(2). The movants summarily state that "RMI's investigations provided it

with what it believes is newly discovered evidence in this matter as described herein."  Doc. No. 23, at 12.  Rule 60(b)(2), however, is inapplicable here.

First, by its terms, Rule 60(b)(2) pertains to evidence discovered after "trial."  The United States Court of Appeals for the First Circuit has extended the provision's reach to cases in which parties seek relief from orders granting summary judgment.  Gonzelez-Pina v. Rodriguez, 407 F.3d 425, 433 (1st Cir. 2005).  However, the movants have cited no authority – and my independent research has uncovered none – supporting application of Rule 60(b)(2) to default judgments.  Unlike a judgment entered following trial or pursuant to Rule 56, a default judgment is based on a party's failure to defend a lawsuit, not the evidentiary shortcomings of its claims. See Fed. R. Civ. P. 55(a) (permitting entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend").  Wintergreen and Levy failed to answer NETI's complaint, let alone present evidence to refute the claims contained therein.  RMI's purported discovery of the default judgment after its entry (and after RMI purchased Wintergreen's accounts receivables) is not the sort of "newly discovered evidence" contemplated by Rule 60(b)(2).

Second, to the extent the movants seek to challenge the accuracy of documents NETI submitted in support of its motion for entry of default via "newly discovered evidence," they may not do so pursuant to Rule 60(b)(2).  "[A] party who seeks relief from a judgment based on newly discovered evidence must, at the very least, offer a convincing explanation as to why he could not have proffered the crucial evidence at an earlier stage of the proceedings."  Karak v. Bursaw Oil Corp., 288 F.3d 15, 19-20 (1st Cir. 2002).  NETI served Wintergreen and Levy with the pleadings related to its request for entry of default at the time the pleadings were filed.  See Doc. Nos. 11-14; see also Doc. No. 30-3.  Wintergreen and Levy had the opportunity to contest

7

those documents by filing timely responses opposing NETI's motion for entry of default judgment.  Their failure to do so does not merit relief under Rule 60(b)(2).

C.      Rule 60(b)(3)

 Next, the movants suggest they are entitled to relief based on "fraud . . . misrepresentation, or misconduct by the opposing party."  See Fed. R. Civ. P. 60(b)(3).  To obtain relief under this subsection, the movants must show: (1) misconduct, "such as fraud or misrepresentation[,] by clear and convincing evidence," and (2) "that the misconduct foreclosed full and fair preparation or presentation of [their] case."  Karak, 288 F.3d at 21 (internal citations and quotations marks omitted).  For misconduct to satisfy the second prong, it "must *substantially* have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed" to judgment.  Anderson v. Cryovac, Inc., 862 F.2d 910, 923 (1st Cir. 1988) (emphasis in original).  Where a party seeks vacatur based on "allegations pertain[ing] to the merits of the underlying claims rather than the preparation and presentation of those claims to the court," Rule 60(b)(3) is "inapplicable."  Capizzi v. States Res. Corp., No. 02-cv-12319, 2005 WL 113679, at *7 (D. Mass. Jan. 20, 2005).  The rule "is designed to afford protection against judgments that are unfairly obtained rather than against judgments that are factually suspect."  Karak, 288 F.3d at 22.

The movants' reliance on Rule 60(b)(3) appears to be based on their disagreement with NETI's compilation of damages and their view of the merits of the underlying claims.  See Doc. No. 23, at 12-13 (asserting that NETI inflated the amount of money Wintergreen owed it, mischaracterized deposits as payments in full, and retained goods pursuant to a non-existent buy-back agreement).  Even assuming that the movants have established the alleged misrepresentations by clear and convincing evidence, they have not demonstrated that such

misrepresentations "foreclosed full and fair preparation or presentation of [their] case." Karak, 288 F.3d at 22.  The movants do not allege, for example, that these misrepresentations somehow caused their default.  Rule 60(b)(3) is not a vehicle for re-litigating the merits of claims, especially where the movants failed to litigate the merits in the first place.  See Capizzi, 2005 WL 113679, at *6-7 (declining to lift default judgment where movant alleged, in part, that the damage assessment was exaggerated).

>    D.    Rule 60(b)(4)

The movants expend considerable energy attacking NETI's service of process on Wintergreen and Levy, which they argue renders the default judgment void.  Doc. No. 23, at 7-12.  A judgment is void, for Rule 60(b)(4) purposes, "only if the court lacked jurisdiction or committed a plain usurpation of power constituting a violation of due process."  Indianapolis Life Ins. Co. v. Herman, 204 F. App'x 908, 910 (1st Cir. 2006).  The concept is narrowly construed.  Hoult v. Hoult, 57 F.3d 1, 6 (1st Cir. 1995).  "A judgment is not void simply because it is or may have been erroneous; it is void only if, from its inception, it was a legal nullity."[6]  Id. Because a court cannot exercise personal jurisdiction over a defendant absent proper service of process, defects in service render judgments void.  Echevarria-Gonzalez v. Gonzalez-Chapel, 849 F.2d 24, 28 (1st Cir. 1988).  "If the judgment is void, the district court has no discretion but to set aside the entry of default judgment."  Id.

Rule 4(e) governs service on Levy, as an individual, and Rule 4(h) governs service on Wintergreen, as a corporation.  Both rules permit plaintiffs to follow the laws of the state "where

---

[6]  The movants assert, without citation, that NETI lacked standing to file suit due to the consent judgment Wintergreen and Levy entered with the Federal Trade Commission.  Doc. No. 23, at 15-16.   Because the consent judgment contained no provision precluding other lawsuits, Doc. No. 27-9, this argument is meritless.

the district court is located or where service is made."[7]  The rules also describe specific methods

for effecting service.  Instead of following state law, NETI claims it used methods prescribed by

the federal rules.  <u>See</u> Doc. No. 28, at 11-12 (relying on Rule 4(e)(2)(A) and Rule 4(h)(1)(B)).

Although NETI bears the burden of proving proper service of process, <u>Saez Rivera v.

Nissan Mfg. Co.</u>, 788 F.2d 819, 821 n.2 (1st Cir. 1986), the returns of service it filed with the

Court constitute "*prima facie* evidence that service was validly performed," <u>Blair v. City of

Worcester</u>, 522 F.3d 105, 111 (1st Cir. 2008).  With its returns, NETI has shown "strong

evidence" that it complied with Rule 4(e)(2)(A) and Rule 4(h)(1)(B).  <u>Curley v. Radow</u>, No. 01-

cv-10956, 2007 WL 2060015, at *4 (D. Mass. July 16, 2007) (internal quotation marks omitted).

The process server stated, in the returns, that he "served [John Levy] at his business, Wintergreen

Systems," and then described several of Levy's physical characteristics.  Doc. Nos. 4-5.  Because

Levy was an individual defendant and the president of Wintergreen, Doc. No. 27-9, at 12-13, this

service satisfies Rule 4(e)(2)(A) and 4(h)(1)(B).  Accordingly, the burden shifts to the movants

to rebut the evidence of service.  <u>Curley</u>, 2007 WL 2060015, at *5.

Instead of offering evidence to rebut NETI's showing, the movants argue that various

defects in the returns render service ineffective, including: (1) that the returns fail to state that

service was "in-hand"; (2) that the returns fail to state whether Massachusetts or Indiana law was

followed; (3) that the returns state the incorrect date of service; and (4) that service on Levy, as

"general manager," is insufficient to effect service on Wintergreen.  Doc. No. 23, at 7-12.  These

arguments promote form over substance.  Rule 4(l)(3) provides that "[f]ailure to prove service

does not affect the validity of service."  <u>See also</u> <u>Evans v. Indiana</u>, 908 N.E.2d 1254, 1258-59

(Ind. Ct. App. 2009) (applying Indiana Trial Rule 4.15(F) and rejecting a challenge to service

---

[7] Only Rule 4(e)(1) contains this quoted language.  Rule 4(h)(1)(A) adopts it, however, in providing for service on corporations "in the manner prescribed by Rule 4(e)(1) for serving an individual."

where the method used was "reasonably calculated to inform the person to be served" about the details of the action filed against him, and where the person to be served had "actual notice" of the pending action). "This provision prevents a defendant who has been properly served from attacking the validity of service on the technical ground of the process server's failure to make return in timely fashion or because the return is deficient in some way." 4B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> ("Wright & Miller") § 1130.

Even if such deficiencies could defeat the presumption created by returns of service, the alleged deficiencies identified by the movants here would be insufficient to so. First, Rule 4 does not require an affidavit of service to contain the phrase "in-hand" in order to demonstrate that an individual defendant – or the president of a corporate defendant – has received valid service. Moreover, NETI has eliminated any dispute over whether it provided "in-hand" service by submitting a supplemental affidavit from its process server affirming that he delivered both complaints to Levy "in-hand." Doc. No. 29 at ¶¶ 8-9.

Second, Rule 4 does not require an affidavit of service to state whether service is being effected pursuant to the federal rules, the law of the forum state, or the law of the state where service is made. NETI elected to follow the federal method. Doc. No. 28, at 12. Nevertheless, hand-delivery of copies of the summons and complaint to Levy appears to satisfy applicable rules under both Massachusetts and Indiana law as well. <u>See</u> Mass. R. Civ. P. 4(d)(1)-(2), (f); Ind. R. Trial P. 4.1(A)(2), 4.6(A)(1), 4.15(F).

Third, although the returns admittedly contain a mistake regarding the year they were served, Doc. No. 29 at ¶ 14 (explaining the process server inadvertently wrote "2010" instead of "2011" when noting the date of service), the movants have failed to substantiate how this error undermines the validity of the service, <u>see</u> Wright & Miller § 1130. This is especially so where

each of the returns contains the correct, type-written date in the first sentence (March 23, 2011) and in the notarization (March 24, 2011), Doc. Nos. 4, 5, and where no complaint was filed, nor any summons issued, until March 2011.

Fourth, the process server's description of Levy as "general manager" of Wintergreen for purposes of the return for the corporation does not invalidate its service.  The movants do not dispute that, at the time of service, Levy was Wintergreen's president.  Doc. No. 23, at 11.  As such, he was an appropriate officer for purposes of service under all relevant state and federal rules.

In addition to their facial challenges to the returns, the movants argue that the service of Wintergreen (via Levy) was defective because NETI was required to serve Chikol, Wintergreen's Indiana receiver.  Doc. No. 23, at 7-9.  The movants, however, cite no cases in which any court – in Indiana or elsewhere – has invalidated service of process in a federal action where a company's president, rather than its state-law receiver, was served.  Instead, the movants rely on Indiana rules of civil procedure and trial practice that permit receivers to prosecute and defend actions on behalf of the corporations they are charged with overseeing.  See Ind. Code § 32-30-5-7; Ind. R. Trial Practice 4.17; see also Martin v. Forrey, 193 N.E. 679, 681 (Ind. App. Ct. 1935) (permitting a plaintiff to sue a company's receiver for negligence that occurred before the receiver was appointed).  Even if applicable to an action in Massachusetts federal court, the state rules permit – but do not require – service on Chikol, as Wintergreen's receiver.  Cf. Louisville, New Albany, & Chi. R.R. Co. v. Cauble, 46 Ind. 277 (1874) (in suit against a railroad company in receivership, service in accordance with state rule governing service of railroad companies was valid).

Moreover, it is undisputed that Chikol, on behalf of Wintergreen, received both the notice of default and NETI's motion for entry of default judgment when they were filed.  See Doc. Nos. 10, 30 at ¶ 4, 30-3.  Chikol declined to challenge service or respond to either the notice or the motion.  Under these circumstances, the movants have failed rebut the evidence of service and demonstrate they are entitled to the "extraordinary relief" they seek.  See Zang, 248 F.3d at 5.

E.     Rule 60(b)(6)

Finally, the movants seek to invoke Rule 60(b)'s catch-all provision, which provides courts with "broad discretion" to vacate judgments for "any other reason that justifies relief."  Id. (internal quotation marks omitted).  No such reason exists here.

Despite the breadth of the catch-all language, the First Circuit has directed that courts "should grant Rule 60(b)(6) motions only where exceptional circumstances justifying extraordinary relief exist."  Id. (internal quotation marks omitted).  "The decision to grant or deny such relief is inherently equitable in nature . . . [and] tends to rest on fact-specific considerations informed by the nature and circumstances of the particular case."  Ungar v. PLO, 599 F.3d 79, 83 (1st Cir. 2010).  For default judgments in particular, "granting or withholding relief . . . entails balancing the importance of finality in litigation against the desirability of deciding cases on the merits."  Id.  In striking this balance, courts consider a "variety of factors . . . includ[ing] the timing of the request for relief, the extent of any prejudice to the opposing party, the existence or non-existence of meritorious claims or defense, and the presence or absence of exceptional circumstances."  Id.  "Rule 60(b)(6) relief is normally unavailable unless [the] defendant has shown that he is 'faultless in the delay.'"  In re Cyphermint, Inc., No. 09-cv-40138, 2011 WL 2417132, at *9 (D. Mass. June 10, 2011) (quoting Ungar, 599 F.3d at 85).  "[A]

willful defaulter faces an uphill climb in making the requisite showing of exceptional circumstances." Ungar, 599 F.3d at 86 n.5.

The equities disfavor the movants' request for vacatur. Wintergreen and Levy willfully defaulted and permitted judgment to be entered against them. The movants have not claimed that either defendant lacked knowledge of the lawsuit, nor have they explained why neither defendant responded to it. Levy was served with notice of the suit in March 2011, and Chiklot received notice of the default in May 2011.[8] Nevertheless, the movants waited until almost a year after entry of default judgment to make any attempt to respond to NETI's claims. This lengthy, unexplained delay balances against granting Rule 60(b)(6) relief.[9]

Moreover, an additional equitable factor weighs against vacatur: Wintergreen and Levy instigated this litigation when their attorney sent NETI a demand letter and threatened to sue. Doc. No. 30-1. NETI incurred expenses in filing the complaint, and in filing the pleadings necessary to secure a default judgment when Wintergreen and Levy declined to respond. "In our adversary system of justice, each litigant remains under an abiding duty to take the legal steps that are necessary to protect his or her own interests." Cotto v. United States, 993 F.2d 274, 278 (1st Cir. 1993). Through their inaction, Wintergreen and Levy breached this duty. The movants may not now revive this action via Rule 60(b)(6).

---

[8] As noted, there is also evidence RMI knew of this litigation as early as April 2011. See Doc. No. 30 at ¶ 7; Doc. No. 30-5.

[9] Although the movants allege that NETI caused this Court to assess damages inaccurately, they do so with conflicting evidence, and without explaining why their allegation distinguishes this action from any other case ending in a default judgment. The fact that the merits of the underlying claims or their related damages were not tested through adversarial proceedings is the fault of the defendants, and does not warrant relief under Rule 60(b)(6).

There is likewise no merit to the movants' claims that the three-year statute of limitations on tort actions in Massachusetts barred the recovery of tort damages here. Doc. No. 23, at 16. NETI based its damage calculation on offsetting contractual obligations, not lost reputation as the movants' claim. Doc. No. 14 at ¶¶ 27, 29. The six-year statute of limitations on contract actions in Massachusetts applied to all of NETI's claims. See Micromuse, Inc. v. Micromuse, PLC, 304 F. Supp. 2d 202, 209 (D. Mass. 2004).

III.     <u>Motion to Intervene</u>

RMI has moved to intervene in this action pursuant to Rule 24.  Doc. No. 20.  Regardless of whether intervention by an assignee, such as RMI, is by right or permissive, <u>see</u> Fed. R. Civ. P. 24(a)-(b), an intervenor must "state a well-pleaded claim or defense to the action."  <u>R.I. Fed'n of Teachers, AFL-CIO v. Norberg</u>, 630 F.2d 850, 854-85 (1st Cir. 1980).  The foregoing discussion of the pending motions to vacate includes consideration of the RMI's arguments for vacatur.  Because I nevertheless recommend that the motions to vacate be DENIED, I also recommend that RMI's motion to intervene be DENIED.

IV.     <u>Conclusion</u>

For the foregoing reasons, I respectfully RECOMMEND that the Court DENY the three motions to vacate, as well as RMI's motion to intervene.[10]

                                 <u>/s / Leo T. Sorokin</u>
                                 Leo T. Sorokin
                                 Chief United States Magistrate Judge

---

[10] The parties are hereby advised that under the provisions of Rule 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  <u>See</u> <u>Keating v. Sec'y of Health & Human Servs.</u>, 848 F.2d 271 (1st Cir. 1988); <u>United States v. Valencia-Copete</u>, 792 F.2d 4 (1st Cir. 1986); <u>Scott v. Schweiker</u>, 702 F.2d 13, 14 (1st Cir. 1983); <u>United States v. Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603 (1st Cir. 1980); <u>see</u> <u>also</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).